Slip Op. 08-142

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
:
AEGIS SECURITY INSURANCE           :
COMPANY,                            :
                                    :
      Third-Party Plaintiff,       :
                                    :  Before: Jane A. Restani, Chief Judge
      v.                           :
                                    :  Court No. 05-00276
MATTHEW FLEMING and MAINLAND,      :
INC.,                               :
                                    :
      Third-Party Defendants.      :
_____:

## OPINION

[Third-party plaintiff's motion for summary judgment denied. Third-party defendant's cross-motion for summary judgment denied.]

Dated: December 23, 2008

<u>Sandler Travis Rosenberg Glad & Ferguson, PC</u> (<u>Thomas R. Ferguson</u>) and <u>Sandler, Travis & Rosenberg, PA</u> (<u>Arthur K. Purcell</u>) for the third-party plaintiff.

<u>Galvin & Mlawski</u> (<u>John J. Galvin</u>) for the third-party defendants.

      Restani, Chief Judge: This matter is before the court on cross-motions for summary judgment by third-party plaintiff Aegis Security Insurance Company ("Aegis") and third-party defendant Matthew Fleming.[1] Aegis seeks reimbursement for monies that it paid the United States ("Government"), pursuant to a surety bond that it issued to third-party defendant Mainland, Inc., to secure its obligations for antidumping duties on pencils imported from the People's Republic of China. The issue presented is whether Fleming may be held personally

---

[1] Fleming's "Cross-Motion for Dismissal" is essentially one for summary judgment.

Court No. 05-00276　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2

liable for Mainland, Inc.'s failure to pay antidumping duties.  For the following reasons, the court will deny both motions for summary judgment.

## FACTS

These facts are undisputed.  In March 1999, Aegis issued a $50,000 continuous surety bond to Mainland, Inc. as principal covering entries for various periods of pencils from the People's Republic of China.  (Br. in Supp. of Aegis' Mot. for Summ. J. ("Aegis' Mot. for Summ. J.") 2; Customs Bond, Gov't's First Am. Compl., Ex. A.)  In May 2002, the Government began investigating entries of Chinese pencils made by Mainland, Inc., and it subsequently discovered that between March 25, 2000, and December 30, 2002, Mainland, Inc. had been importing pencils under entry documents that contained an incorrect entry code, failed to reference the relevant antidumping duty order, and were unaccompanied by payment of antidumping duties.  (Gov't's Mem. in Supp. of its Mot. for Summ. J. ("Gov't's Mot. for Summ. J.") 7–9.)  After the investigation, the Government demanded that Mainland, Inc. pay $104,625.03 in duties.  (Aegis' Statement of Material Facts for Which There is No Genuine Issue to be Tried ("Aegis' Rule 56(h) Statement") ¶ 13; Fleming's Rule 56(h)(2) Resp. to Aegis' Statement of Material Facts for Which There is No Genuine Issue to be Tried ("Fleming's Rule 56(h)(2) Resp.") ¶ 13.)  In March 2005, as a result of Mainland, Inc.'s failure to respond to the Government's demands for payment, the Government commenced the underlying action against Aegis, pursuant to the surety bond, to recover the duties.  (Gov't's Compl.; Gov't's First Am. Compl.)  In November 2005, Aegis commenced this third-party action against Mainland, Inc., seeking indemnification.  (Aegis' Answer & Third-Party Claim 4–8.)  In June 2006, Aegis added Fleming as a third-party defendant, alleging that Fleming and Mainland, Inc. were agents of each

Court No. 05-00276 Page 3

other and that "there [was] such unity of interest between [them] that [their] separate personalities . . . no longer exist." (Aegis' Answer & Am. Third-Party Claim 5.) Fleming appeared and answered in his individual capacity, and the court entered default against Mainland, Inc. (Fleming's Answer to Am. Third-Party Claim; Entry of Default, Apr. 3, 2007.)

In September 2007, Aegis and the Government settled the underlying action, and Aegis paid the Government $56,410.61 in full satisfaction of its obligations to the Government.[2] (Aegis' Rule 56(h) Statement ¶ 21; Fleming's Rule 56(h)(2) Resp. ¶ 21; Settlement Agreement, Aegis' Answer & Second Am. Third-Party Claim ("Aegis' Third-Party Claim"), Ex. A.) In November 2007, Aegis amended its third-party complaint against Fleming to add a claim for equitable subrogation, alleging liability under 19 U.S.C. § 1592 based on fraud. (Aegis' Third-Party Claim 3–9.) In his answer, Fleming asserted that he was insulated from personal liability for Mainland, Inc.'s acts because he did not employ the company to mislead or defraud creditors. (Fleming's Answer to Second Am. Third-Party Claim ("Fleming's Answer") 7.)[3]

During discovery, in response to Aegis' request for the corporate documents of Mainland, Inc., Fleming produced documents bearing the name "Mainland Enterprises, Inc." (Aegis' Reply to Fleming's Resp. & Opp'n to Aegis' Mot. for an Order to Show Cause Re:

---

[2] Because of bond limitations, the Government had sought to recover $89,393.07 of the debt from Aegis. (Gov't's Mot. for Summ. J. 10.)

[3] Fleming also asserted that the court did not have jurisdiction over the third-party action based on Aegis' error in naming "Aegis Insurance Company" rather than "Aegis Security Insurance Company" as the third-party plaintiff in the caption of the complaint. (Fleming's Answer 6.) This naming error is likely of no moment and, in any case, Fleming appears to have abandoned this argument, as he correctly named "Aegis Security Insurance Company" as the third-party plaintiff in his answer. (See id. at 1.)

Court No. 05-00276                                                                                              Page 4

Contempt, & for Sanctions 3–4.)  According to Aegis, this created the impression that there were two separate entities at issue.  (See id. at 4.)  Pursuant to requests to clarify the relationship between the two entities, Fleming disclosed that "Mainland, Inc." was in fact a non-existent entity and merely a short-hand reference to the formal corporate name "Mainland Enterprises, Inc." (Aegis' Mot. for Summ. J. 11; Fleming's Supplemental Resp. to Aegis' Interrogs. & Reqs. for Produc. 4, Aegis' Mot. for Summ J., Ex. 6.)  Based on this discovery and other documentary evidence, Aegis now moves for summary judgment, claiming that Fleming used the corporation for improper purposes and urging the court to pierce the corporate veil to hold him personally liable under its indemnification cause of action.  (Aegis' Mot. for Summ. J. 8–19.)  Aegis also argues that even if the corporate veil may not be pierced, Fleming is still personally liable under the subrogation cause of action because, after having paid the Government in satisfaction of the underlying action, Aegis now steps into the shoes of the Government, which could have recovered antidumping duties from Fleming under 19 U.S.C. § 1592.  (Id. at 19–21.)  Fleming cross-moves for summary judgment, maintaining that he may not be held personally liable under either theory.  (Mem. in Supp. of Fleming's Opp'n to Aegis' Mot. for Summ. J. & in Supp. of Fleming's Cross-Mot. for Dismissal ("Fleming's Opp'n to Mot. for Summ. J. & Cross-Mot. for Summ. J.") 4–11; Fleming's Reply to Aegis' Resp. in Opp'n to Fleming's Cross-Mot. for Summ. J. 1–8.)

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction over this matter under 28 U.S.C. § 1583 (covering third-party actions in suits by the United States "to recover upon a bond or customs duties"). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the nonmoving party's claim. Celotex, 477 U.S. at 323. Upon such showing, the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact. See USCIT R. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The inquiry is whether there is any evidence upon which a fact-finder can properly proceed to render a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court views the facts and any inferences in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.

## DISCUSSION

### I. Piercing the Corporate Veil

Aegis argues that "[t]he corporate form of 'Mainland' should be disregarded" because "Fleming, the sole shareholder of Mainland, is, in effect, the 'alter ego' of Mainland, and Fleming's actions justify piercing the corporate veil of Mainland under applicable law." (Aegis' Mot. for Summ. J. 8.) Fleming responds that under Florida law, "he cannot be sued in this action since Aegis has failed to prove that he formed or used Mainland for some illegal, fraudulent or other unjust purpose." (Fleming's Opp'n to Mot. for Summ. J. & Cross-Mot. for Summ. J. 1.)

Under USCIT Rule 17(b), "[t]he capacity of an individual . . . to sue or be sued shall be determined by the law of the individual's domicile." USCIT R. 17(b). Fleming is

domiciled in Florida. (Aegis' Rule 56(h) Statement ¶ 8; Fleming's Rule 56(h)(2) Resp. ¶ 8.) In Florida, a corporation is "a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders." Advertects, Inc. v. Sawyer Indus., 84 So. 2d 21, 23 (Fla. 1955). Nonetheless, Florida courts

> will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, or where the corporation was employed by the stockholders for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetrate a fraud upon them, or to evade existing personal liability.

Tiernan v. Sheldon, 191 So. 2d 87, 89 (Fla. Dist. Ct. App. 1966) (citing Advertects, 84 So. 2d at 23; Riley v. Fatt, 47 So. 2d 769, 773 (Fla. 1950); Bellaire Sec. Corp. v. Brown, 168 So. 625, 633 (Fla. 1936); Mayer v. Eastwood-Smith & Co., 164 So. 684, 687 (Fla. 1935)). Despite this seemingly broad basis for piercing the corporate veil, as a matter of law and equity, Florida courts may pierce the corporate veil to hold shareholders personally liable where it is shown that the corporation is the alter ego of the shareholders and that the shareholders engaged in improper conduct. See generally Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1116–21 (Fla. 1984); see also Steinhardt v. Banks, 511 So. 2d 336, 339 (Fla. Dist. Ct. App. 1987) ("Eliminating the ambiguous provision 'or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock' from the Tiernan opinion leaves a workable formula for applying the Sykes reference to 'improper conduct.'").

      Here, in support of its alter ego theory, Aegis asserts that Fleming, "the sole manager, owner, and shareholder of [Mainland, Inc.]/[Mainland Enterprises, Inc.], completely

dominated and controlled the company and its import operations." (Aegis' Mot. for Summ. J. 10.) Fleming admits that he is the sole shareholder and manager of the company and that he was the only one in the company responsible for "ordering, purchasing, importing, entering, and paying duties on Chinese pencils during all relevant periods." (Aegis' Rule 56(h) Statement ¶¶ 7, 12; Fleming's Rule 56(h)(2) Resp. ¶¶ 7, 12; Aegis' Rule 56(h)(2) Resp. 4.) It is undisputed that Fleming failed to observe corporate formalities, specifically by failing to timely create and properly maintain corporate documents, loaning the company money, and failing to file the fictitious name "Mainland, Inc." in Florida. (Aegis' Rule 56(h) Statement ¶¶ 14–17; Fleming's Rule 56(h)(2) Resp. ¶¶ 14–17.) Aegis, however, acknowledges that "the mere failure of a closely held corporation to follow its corporate forms is not 'by itself' a ground for basing individual shareholder liability," but it argues that "when that failure is shown to be part of an intentional scheme to evade responsibility for customs duties, . . . such liability ought to attach." (Aegis' Br. in Opp'n to Fleming's Cross-Mot. for Summ. J. & Reply to Fleming's Opp'n to Aegis' Mot. for Summ. J. ("Aegis' Opp'n to Cross-Mot. for Summ. J. & Reply to Opp'n to Mot. for Summ. J.") 11.) Aegis does not allege that Fleming organized Mainland, Inc. for an illegal or unjust purpose, but rather that he later used the company "for the unjust purpose of <u>misleading</u> [U.S. Customs and Border Protection ("Customs")] (a creditor) and/or the surety and avoiding the payment of lawfully assessed antidumping duties, for which Aegis' [sic] was jointly an [sic] severally liable." (Aegis' Mot. for Summ. J. 9.) Specifically, Aegis contends that before March 25, 2000, Fleming consistently filed entries for pencils from China in accordance with the antidumping order and paid antidumping duties under the names "Matthew Fleming DBA Mainland" or "Mainland, Inc.," and at times using his personal social security number, but that

beginning in 2000, "Fleming suddenly and knowingly decided to begin entering pencils from China under cover of the 'formal' corporate name of Mainland Enterprises Inc." (Id. at 13.) According to Aegis, this "abrupt decision to begin using the registered corporate name coincided with Fleming's purposeful decision not to enter the goods under the AD Order and to stop paying antidumping duties on similar entries of pencils from China." (Id. at 13–14.) In support of its claim of purposeful conduct, Aegis asserts that Fleming was an experienced importer of Chinese pencils who has an MBA degree and that Fleming had been importing Chinese pencils even prior to his company's incorporation and during a period when Chinese pencils were subject to the antidumping duty order. (Id. at 14.) Aegis also contends that the Government had demanded, and Fleming had paid, antidumping duties on an entry for November 2000, and not just on entries for an earlier period. (Aegis' Opp'n to Cross-Mot for Summ. J. & Reply to Opp'n to Mot. for Summ. J. 4; Gov't's Mot. for Summ. J. 8–9.) Thus, Aegis argues Fleming was fully aware of his payment obligation as to the entries at issue.

Fleming contends that he did not try to mislead Aegis or the Government by using several corporate names. He claims that he never hid the fact that "Mainland, Inc." and "Mainland Enterprises, Inc." were the same entity, pointing out that the surety bond and documents submitted early in discovery show that the two entities share the same employer identification number ("EIN"). (Fleming's Opp'n to Mot. for Summ. J. & Cross-Mot. for Summ. J. 2.) Fleming also explained that he used his personal social security number only before Mainland Enterprises, Inc.'s incorporation, which occurred in June 1997, and while he was waiting for its EIN and importer identification number. (Id. at 3; Aegis' Rule 56(h) Statement ¶ 5; Fleming's Rule 56(h)(2) Resp. ¶ 5.) He further claims that various customs brokers began

entering pencils under the EIN in January 1998, but that a certain customs broker mistakenly used his social security number in three July 1998 entries. (Fleming's Opp'n to Mot. for Summ. J. & Cross-Mot. for Summ. J. 3.) He also attributed any inconsistencies in the entry documents to his use of different customs brokers and difficulty in classifying pencils. (Id. at 4–5; Fleming's Reply to Aegis' Resp. in Opp'n to Fleming's Cross-Mot. for Summ. J. 8.)

Fleming, whose company seems to be focused on pencils, admits that he is an experienced importer of Chinese pencils and does not deny that he was aware of the antidumping duty order. (Aegis' Rule 56(b) Statement ¶ 12; Fleming's Rule 56(h)(2) Resp. ¶ 12.) During his deposition, Fleming admitted that between 1997 and 1999 he declared antidumping duties, which were at deposit rates of zero, 8.6 or 53.65 percent (Fleming Dep., Aegis' Mot. for Summ. J. Ex. 2 ("Fleming Dep") 58:12–68:6, Sept. 26, 2007), but he implies that he did not act knowingly because declarations need not have been made if the entries at issue had had a zero percent rate (id. at 61:16–21, 68:7–13, 71:18–72:3.) Fleming also testified that from 1997 through 1999, in paying his broker bills, he did not "study closely every document" because he "had an assembly operation for pencils and it was a small . . . corporation, and [he] handled a lot of things." (Id. at. 73:10–14.) He admitted that he paid antidumping duties from 1997 through 1999, but stated that he did not analyze all the numbers on the invoices, as the numerous percentages on the documents confused him. (Id. at 73:24–74:4, 78:8–12.) He stated that the antidumping duty issue was "a very confusing issue" also because "[t]here were several companies [meaning producers or exporters] with different rates, . . . and the duty rates changed every year." (Id. at 74:16–19.) He admitted that he was the only one in his company deciding whether to pay or challenge antidumping duties, but claimed that he relied upon the customs

Court No. 05-00276 Page 10

brokers to submit the entries. (Id. at 79:7–13.)

Here, Aegis met its burden of defeating Fleming's cross-motion for summary judgment. It showed that the company is a small entity focused on pencils from China and that Fleming controlled and dominated its operations. Aegis also showed that Fleming failed to adhere to corporate formalities. Aegis further demonstrated that Fleming, an experienced importer of Chinese pencils, knew about the antidumping duty order on Chinese pencils, controlled payments and protests of duties, and had paid the antidumping duties on previous entries, and on at least one during the relevant period, yet failed to assure they were declared in the entry documents at issue. Aegis points to documents first submitted to the court via an affidavit submitted with the Government's motion for summary judgment in the underlying action to support its position that Fleming used various corporate names and entities to avoid personal liability for antidumping duties. (See Aegis' Mot. for Summ. J. 13.) While an inference of improper conduct sufficient to establish liability might be drawn from the totality of evidence, Aegis does not succeed in eliminating material factual disputes with respect to its own summary judgment motion.

First, the documentary evidence is consistent with Fleming's explanation that "Mainland, Inc." is merely a short-hand reference for "Mainland Enterprises, Inc.," as it shows that "Mainland, Inc." and "Mainland Enterprises, Inc." share the same address, EIN, and importer identification number.[4] (See Confidential App. to Gov't's Mem. in Supp. of its Mot. for Summ. J. ("Confidential App."), Attachs. H & I.) Second, the inconsistent use of "Mainland,

---

[4] A corporation's assigned EIN and importer identification number are the same. See 19 C.F.R. § 24.5.

Inc." and "Mainland Enterprises, Inc." in the entry documents can be traced to Fleming's use of different customs brokers. (See id.) The sudden use of "Mainland Enterprises, Inc." and a different entry code in the March 25, 2000, entry document coincides with the use of a new broker. (Compare id., Attach. I, with id., Attach. H, Tab 1.) Contrary to Fleming's claim, however, the record appears to indicate that pencils were first entered under the EIN in April 1999, and that the EIN has been consistently used since then, regardless of whether Mainland, Inc. or Mainland Enterprises, Inc. was named as the importer of record. (See id., Attachs. H & I.) Thus, the switch to corporate form in some way roughly coincides with the antidumping duty payment problems.

The issue here is Fleming's intent, a fact that is very difficult to establish on summary judgment. Fleming, in his deposition testimony, raises a genuine issue of material fact as to whether he engaged in fraudulent conduct. In particular, the testimony shows that although he was aware of the antidumping duty order, he implies that he should be excused because declaring antidumping duties would not be necessary if the duty rate were zero. (Yet, the antidumping duty rates for the entries at issue were not zero.) Further, Fleming testified that the invoices submitted by his brokers were confusing, as they contained many numbers, and that he was unable to scrutinize every document. His testimony is that he relied on the brokers in submitting the documents. Based on this evidence, a fact-finder could conclude that Fleming had no intent to mislead or defraud the Government. Accordingly, the material fact of Fleming's intent remains for trial.

## II. Subrogation to a 19 U.S.C. § 1592 Claim

Aegis argues that even if the corporate veil could not be pierced, "[u]nder

established principles of subrogation, . . . having paid duties to the United States pursuant to 19 U.S.C. § 1592(d), under the [surety] bond, [it] stepped into the shoes of the Government and became entitled to pursue the United States' section 1592(d) claim against Fleming." (Aegis' Opp'n to Cross-Mot. for Summ. J. & Reply to Opp'n to Mot. for Summ. J. 7.) Aegis asserts that "[b]ecause the United States (as creditor) had the right to sue Fleming as an individual 'person' for violating 19 U.S.C. § 1592(a) and could collect duties against him under § 1592(d)," Aegis could recover against Fleming personally once it became subrogated to the Government's claim. (Aegis' Mot. for Summ. J. 19.) Fleming argues that he is not subject to liability under § 1592 because he was not the importer of record. (Fleming's Reply to Aegis' Resp. in Opp'n to Fleming's Cross-Mot. for Summ. J. 3.)

   Under the doctrine of equitable subrogation, "a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137 (1962). The rights to which the surety is entitled, however, are no greater than those of the party for whom the surety is substituted. United States v. California, 507 U.S. 746, 756 (1993) ("The subrogee, who has all the rights of the subrogor, usually 'cannot acquire by subrogation what another whose rights he claims did not have.'") (quoting United States v. Munsey Trust Co., 332 U.S. 234, 242 (1947)). Thus, the surety takes the rights subject to the limitations incident to them while in the hands of the party to whom the surety is subrogated, including limitations under statutes of limitations. See id. ("Here [the subrogor's] rights have lapsed and its claims are barred. Under traditional subrogation principles then, the claims of the [subrogee] also would be barred.").

>  Section 1592(a) states:
>
> Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence--
>
> (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
>
> (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
>
> (ii) any omission which is material, or
>
> (B) may aid and abet any other person to violate subparagraph (A).

19 U.S.C. § 1592(a)(1). Aegis alleges that "Fleming is a 'person' within the meaning of [§ 1592(a)], who by means of fraud, knowingly entered and introduced merchandise into the commerce of the United States by means of documents which were material and false and/or by material omissions." (Aegis' Third-Party Claim 9.) Under the facts of the case, however, absent piercing of the corporate veil, Fleming may not be liable under this theory because he was not the one who directly entered or introduced merchandise into commerce. Rather, the corporation was the importer of record, which utilized customs brokers to file entry documents on its behalf. Nonetheless, Fleming may still be liable for violation of § 1592(a) if he aided and abetted the corporation to violate the statute.[5] To be liable under this theory, however, Fleming's conduct must rise to the level of fraud. See United States v. Action Products Int'l, Inc., 25 CIT 139, 144

---

[5] The second amended third-party complaint alleges liability under § 1592(a) based on fraud. (Aegis' Third-Party Claim 9.) Section 1592(a)(1)(B) covers aiding and abetting. Thus, the complaint would seem broad enough to cover this theory of liability. Using criminal law as an analogy, charging of the substantive offense includes aiding and abetting, whether specifically charged or not. See United States v. Dunne, 324 F.3d 1158, 1163 (10th Cir. 2003).

Court No. 05-00276 Page 14

(2001) (stating that one cannot be held liable for negligent aiding and abetting because "a claim of aiding and abetting requires knowledge or intent on the part of the offender") (quoting <u>United States v. Hitachi Am., Ltd.</u>, 172 F.3d 1319, 1338 (Fed. Cir. 1999)). As discussed in Part I, based on the evidence presented to the court in the summary judgment papers, a triable issue of fact exists as to whether Fleming intended to defraud the Government.

Fleming also argues that Aegis may not recover against him under § 1592 because the claim against him under § 1592 is time-barred. (Fleming's Reply to Aegis' Resp. in Opp'n to Fleming's Cross-Mot. for Summ. J. 4.) Assuming the statute of limitations is a good defense, it would not appear to bar the entire claim even under the earliest possible date of commencement.[6] Further, neither party addressed the statute of limitations in their pleadings or initial briefs on their cross-motions for summary judgment. Rather, Fleming did not raise this defense until his reply brief in support of his cross-motion for summary judgment and, therefore, Aegis did not have an opportunity to address it at all. While the statute of limitations defense likely is waived, the parties may address this issue further in their pre-trial filings. <u>See</u> USCIT R. 8(d) (stating that parties must set forth affirmative defense of statute of limitations in pleadings); <u>see also</u> 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

---

[6] An action to recover duties under § 1592(d) must be "commenced within five years after the time when the alleged offense was discovered," and an action alleging violation of § 1592 must be "commenced within 5 years after the date of the alleged violation or, if such violation arises out of fraud, within 5 years after the date of discovery of fraud." 19 U.S.C. § 1621. Here, the earliest violation of § 1592 occurred on March 25, 2000, the Government discovered the violations at the earliest in May 2002, and the latest violation occurred on December 30, 2002. Aegis asserted its indemnification claim against Fleming on June 2, 2006 and its claim for equitable subrogation against Fleming on November 29, 2007. (Aegis' Answer & Am. Third-Party Claim 9; Aegis' Third-Party Claim 10.)

Court No. 05-00276	Page 15

1278 (3d ed. 2004) (noting that "failure to plead an affirmative defense . . . results in the waiver of that defense and its exclusion from the case"); 2 Moore's Federal Practice § 8.08[1][6] (Matthew Bender 3d ed.) (noting that "affirmative defense that an action is barred by a statute of limitations must be pleaded in a response pleading").

## **CONCLUSION**

Because the existence of a genuine issue of material fact as to Fleming's state of mind precludes the court from resolving this case on the motions before it, summary judgment is not granted to either party. Accordingly, the court will DENY Aegis' motion for summary judgment and DENY Fleming's cross-motion for summary judgment.

The parties shall submit within 30 days a schedule for submission of pre-trial filings and a date for trial to be scheduled no later than April 30, 2009.

                                          /s/ Jane A. Restani
                                              Jane A. Restani
                                              Chief Judge

Dated this 23rd day of December, 2008.
New York, New York.

# NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

      or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____    By: _____
                                                              Deputy Clerk